Mike BRUCE et al., Plaintiffs,

v.

MARTIN–MARIETTA CORPORATION, a Maryland Corporation, and Ozark Airlines, Inc., a Missouri Corporation, Defendants.

Civ. No. 74–612–D.

United States District Court,
W. D. Oklahoma.

June 30, 1975.

See also, D.C., 418 F.Supp. 837.

John W. Norman, Larry A. Tawwater, Oklahoma City, Okl., for plaintiffs.

D. C. Johnston, Jr., Oklahoma City, Okl., for defendant Martin-Marietta Corp.

## ORDER

DAUGHERTY, District Judge.

This products liability action arises from the crash of a Martin 404 aircraft on October 2, 1970 near Silver Plume, Colorado. Plaintiffs herein were either injured in said crash or bring actions on behalf of persons killed therein. Joined as Defendants in the instant case are Martin-Marietta Corporation (Martin-Marietta) which manufactured the aircraft which crashed and Ozark Airlines, Inc. (Ozark) which had owned the aircraft at a time prior to the date of the crash. Plaintiffs herein originally initiated separate actions in the District Court of Oklahoma County, State of Oklahoma against the defendants herein and other parties. Said actions were dismissed in said State Court as to Defendants herein and this combined action filed.

In their Complaint, Plaintiffs allege the crash resulted from Defendants' negligence in the design, manufacture, inspection, service, maintenance and equipping of said aircraft. They contend Defendants were negligent in failing to equip and maintain said aircraft to include crashworthy design characteristics. In regard to this assertion, they contend that the seats and seat attachments did not minimize the possibility of failure by forces acting on the seats during the crash. They also contend that the aircraft did not incorporate design and manufacturing techniques to minimize the possibility of fire in the event of a crash. Plaintiffs allege further that the crash constituted a breach of implied and express warranties by Defendants that the aircraft was crashworthy. They also assert that the crash was caused by defects existing in the aircraft engines for which Plaintiffs assert Defendants are strictly liable in tort. Their last theory for liability is an allegation that the injuries received were as a result of the failure of Defendants to incorporate crashworthy features in the aircraft for which Plaintiffs assert Defendants are strictly liable in tort.

Defendant Martin-Marietta has filed a Motion for Summary Judgment. Said Motion is based on multiple grounds to include the following: (1) There is no substantial controversy as to material facts; (2) Plaintiffs do not allege defects which proximately caused the death; (3) An aircraft manufacture does not have a duty to make a "crash proof" airplane; (4) That the dangers of aircraft crashes are obvious; (5) That the normal use of an airplane does not include crashes; (6) An aircraft manufacturer or seller is not an insurer; (7) An aircraft manufacturer has no duty to adopt every conceivable safety device; (8) A duty to minimize injuries would be indefinable;

(9) The duty Plaintiffs seek to impose would be retroactive; (10) Juries should not be arbiters of design questions not involving the cause of the crash; (11) Crashworthy design requirements should be a legislative and not judicial function; (12) That the United States Congress has assumed control over aircraft design standards for all civil aircraft. Defendant Martin-Marietta has submitted an affidavit by its assistant secretary in support of said Motion. This affiant states that the aircraft in question was delivered to the initial purchaser on March 21, 1952. He states that the aircraft was manufactured and designed to meet or exceed all applicable design requirements, safety requirements, and other criteria prescribed by the Civil Aeronautics Administration (C.A.A.), Department of Commerce, in accordance with the regulations in effect on the date of manufacture to include manufacture in accordance with a C.A.A. production certificate issued in October, 1951 for Martin 404 aircraft. The affiant states that the aircraft was designed and manufactured with a view of surpassing any contemporary commercial transport in safety. He sets out in said affidavit detailed matters relating to features designed to minimize the possibility of explosion or fire. He states that the seats which were manufactured by another firm were designed to meet or exceed all the criteria prescribed in the Civil Air Regulations then in effect. Defendant Martin-Marietta urges in its Brief in support of its Motion that an aircraft manufacturer is not required to design or test the design of an airplane from the standpoint of how it may be misused by a user or bludgeoned by outside forces while being used by a user. It also contends that to require manufacturers to construct airplanes in which it would be safe to crash would be a legislative function, not an aspect of judicial interpretation. Defendant Martin-Marietta urges that Plaintiffs responded to its interrogatories as follows:

"It is not plaintiffs' position that the crash was caused by defendant, Martin-Marietta, but the injuries and death were aggravated or caused by defendant's negligence as set forth in the Petition."

Defendant Martin-Marietta contends that a determination must be made as a matter of law as to whether the manufacturer of a product is liable on the purported theory of "crashworthiness" where the alleged defect did not cause or contribute to the cause of the accident. Defendant Martin-Marietta relies on the case of *Evans v. General Motors Corporation,* 359 F.2d 822 (Seventh Cir. 1966) and numerous cases following the holding therein.

Plaintiffs in their Brief opposing Defendant Martin-Marietta's Motion contend that an aircraft manufacturer should be held to a standard of reasonable care in design to provide a reasonably safe aircraft in which to travel; and, at least, the unreasonable risks should be eliminated and reasonable steps taken in design to minimize the injury producing effects of crash landing of the aircraft. They further contend that a regulatory standard is no more than a minimum standard and does not preclude a finding that a manufacturer was negligent or strictly liable in failing to take additional precautions. In opposition to said Motion, they submit the affidavit of an aircraft accident investigator who states that it is his opinion that aircraft seats were in common use on October 2, 1970, the date of the crash, which would have remained in place in the crash in question and would not have impeded the escape of passengers from the burning aircraft. Plaintiffs rely on the case of *Larsen v. General Motors Corporation,* 391 F.2d 495 (Eighth Cir. 1968), and numerous cases following this decision. In this regard, Plaintiffs urge that the possibility of the crash of an aircraft is foreseeable and such is admitted by Defendant Martin-Marietta's affiant when he refers to design relating to fire safety and meeting C.A.A. seat standards. Plaintiffs also contend that an Oklahoma Law Review article writer in 1970 predicted that Oklahoma Courts would ultimately adopt the *Larsen* doctrine of crashworthiness. In this regard, this Court is not satisfied that the instant case is governed by Oklahoma law and moreover, the Courts·should not con-

sider or give weight to "predictions" by non-judicial writers.

The parties agree that the aircraft struck trees at the 10,800 foot level of a mountain and came to rest 425 feet from the point of initial impact. Plaintiffs contend that the crash involved a relatively low force impact and that immediately after the crash the fuselage was in one piece and not burning. They further contend that the injuries received resulted from or were aggravated by defective seats which broke upon impact. For the purposes of considering the instant Motion, the Plaintiffs' theory of the facts concerning the crash and the resulting impact will be considered as factually correct.

■ In diversity cases such as the instant case, the Federal Courts apply conflicts of law rules which conform to those prevailing in the State Courts in which the Federal Court is located. *Klaxon Co. v. Senator Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Westric Battery Co. v. Standard Electric Co.,* 482 F.2d 1307 (Tenth Cir. 1973). The Oklahoma Supreme Court adopted a new standard for application of conflicts of law questions in tort cases in *Brickner v. Gooden,* 525 P.2d 632 (1974) when they adopted the "significant contacts" test. Said test was stated to be:

"The factors to be taken into account and to be evaluated according to their relative importance with respect to a particular issue, shall include:

(1) the place where the injury occurred,

(2) the place where the conduct causing the injury occurred,

(3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(4) the place where the relationship, if any, between the parties occurred."

Defendant Martin-Marietta in its Answer urges that the law of Colorado should be applied in this products liability action or alternatively that the law of Kansas should be applied. It has filed a Supplemental Brief in support of its Motion for Summary Judgment in which it urges that the law of Kansas should be applied by the Court in determining the instant Motion or in the alternative it urges that the law of Colorado is applicable. Plaintiffs have not addressed themselves to this conflicts of law question in their Response to the instant Motion.

■ In looking to the conflicts of laws question, the nature of the instant lawsuit must be kept in mind. This is a products liability action and as such differs from actions based on operation of the aircraft. See *In re Air Crash Disaster Near Silver Plume, Colorado,* 368 F.Supp. 810 (Jud.Pan. Mult.Lit.1973).

The issue raised in this lawsuit between Plaintiffs and Defendant Martin-Marietta and which issue must be considered in determining the instant Motion is the extent of the duty a manufacturer of an airplane has to use reasonable care in the design and manufacture to avoid subjecting passengers to an unreasonable risk of injury or enhancement of injury in the event of a crash. The question is also whether the "second accident" or "crashworthiness" doctrine is applicable. Said doctrine if same applies to the instant case arises from purported defects in the seats or the seat fastenings which defects are alleged to have caused the injuries and deaths complained of. In this respect, the so called "second accident" occurred simultaneously with the crash and for the purposes of considering the conflicts of laws question, the Court can see no difference between an action on the "second accident" doctrine than in a products liability case in which it is alleged that a defect proximately caused the crash or accident from which injuries allegedly result.

■ Looking to the factors to be taken into consideration in applying the "significant contracts" test, the Court considers the following: (1) The place the injuries and deaths occurred is Colorado which carries relatively minor importance as to the issues herein between Plaintiffs and the manufacturer of the aircraft for the reason that the crash occurred while a transient aircraft

was passing through said state. (2) The place where the conduct allegedly aggravating or causing the injuries and deaths would appear to be Maryland where the plane was designed and manufactured and as alleged omissions in design and manufacture by Defendant Martin-Marietta constitute the very basis of the claims against said Defendant by Plaintiffs herein, this factor is of major importance. (3) The domicile and residence of the parties Plaintiff are not disclosed in the Complaint, but Defendant Martin-Marietta has attempted to set same out in its Reply Brief and the Court will consider such allegations as being the best evidence before it on this point. The state of Kansas is dominate in this respect due to fact most of the passengers on said flight were making same as guests of Wichita State University, however, two claims herein are made on behalf of crewmembers killed in the crash who were residents of Oklahoma. It could possibly be said that the state of Kansas predominates in regard to the place of domicile and residence of the parties Plaintiff and this factor is of considerable importance, however, the fact that all of the persons injured or killed in the crash are not from Kansas minimizes this factor to some degree. Further, the fact that Plaintiffs elected to file the instant action in this forum when same could have been filed in Kansas further tends to minimize the importance of the contacts with Kansas. The number of persons from Oklahoma injured or killed in the crash is small and thus Oklahoma's contact is not of major importance in considering the residence or domicile of the parties. Defendant Martin-Marietta is a Maryland corporation with its principal place of business in Maryland. Maryland has contacts which are very significant as same relate to a products liability action based on a product manufactured and designed in said state. (4) The place where the relationship, if any, between the parties occurred is undeterminable because a direct relationship did not exist. In analyzing the factors to be considered as to the issues between Plaintiffs and Defendant Martin-Marietta, it appears that the state with the most significant contacts is Maryland and this Court thus determines that the law of Maryland is applicable in determining the respective rights of the parties as to said issues.

In looking to the merits of Defendant Martin-Marietta's Motion for Summary Judgment, the respective rights and duties of the parties as same existed at the time and place of the crash on October 2, 1970 must be considered. The allegations in Plaintiffs' Complaint are overly broad and ambiguous in that two Defendants are joined in this products liability action and allegations refer to a singular Defendant and cover a spectrum ranging from design and manufacture of the aircraft to service and maintenance of same. Defendant Martin-Marietta was the manufacturer of the aircraft while the other Defendant was a previous owner of same. In the Answers to Interrogatories by Plaintiffs (Contained in copies of State Court proceedings which have been adopted by the parties to the instant action by stipulation) the Plaintiffs by stating that they do not contend that the crash was caused by Defendant Martin-Marietta have abandoned any claims against said Defendant relating to alleged defects in the engines of said aircraft. The Court determines that the issues against Defendant Martin-Marietta have been narrowed by Plaintiffs to allegations that are properly classified under the second impact or crashworthiness doctrine. Further, the Court determines that the allegations in the Complaint not relating to the design or manufacture of the aircraft do not refer to Defendant Martin-Marietta and further that the basis of Plaintiffs' claims against Defendant Martin-Marietta are contained in the allegations that the aircraft was not equipped and maintained with crashworthy design characteristics. In regard to these alleged defects in the product, the Complaint only complains of the seats and seat fastenings not being designed or manufactured so as to minimize the possibility of failure in the event of a crash and further that the aircraft was not designed in a

manner to minimize the possibility of a fire breaking out in the event of a crash.

■ Defendant Martin-Marietta's Motion for Summary Judgment is made pursuant to Rule 56, Federal Rules of Civil Procedure. Said Defendant has accompanied its Motion with the Affidavit of one of its officers in which the Affiant states that said aircraft was designed and manufactured prior to 1952 with a view towards surpassing any contemporary standards for safety and other features. He further states that all safety and design criteria prescribed by the C.A.A. were met or exceeded. Said Affidavit sets out in detail many features incorporated into the design of said aircraft for the purpose of minimizing the possibility of a fire in the event of a crash. This Affiant further states that the seats which were designed and manufactured by another company were designed to meet or exceed all of the criteria prescribed in Civil Air Regulation 514.35.

Rule 56(e), Federal Rules of Civil Procedure, provides:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The only response by Plaintiffs relating to the design being accomplished for the purposes of minimizing fire in the event of crash is by way of argument in its Brief that Defendant Martin-Marietta considered the possibility of a crash and resulting fire when it designed and manufactured the aircraft and thus said Defendant should be held responsible for manufacturing an aircraft which would minimize injuries in the event of crash. This allegation contained in their Brief does not counter or negate that portion of the Affidavit in Support of Defendant Martin-Marietta's Motion that relate to design and manufacturing features incorporated in the aircraft in question for the purpose of minimizing the hazard of fire in the event of a crash. For the purposes of considering this Motion, the Court must find that the aircraft in question was designed and manufactured in such a manner that the hazards of a fire in the event of crash were minimized in accordance with then existing standards in the design and manufacture of commercial transport aircraft and that the aircraft contained no defect when manufactured in regard to this item as alleged by Plaintiffs in their Complaint.

■ Plaintiffs in their Response attempt to counter that portion of the Affidavit of Movant's officer which states the seats which were installed met or exceeded all criteria contained in the appropriate Civil Air Regulations applicable at the time of manufacture. Plaintiffs submitted the Affidavit of an aircraft accident investigator who states that on October 2, 1970 there were airline passenger seats in common use which in his opinion would have remained in place in the accident in question. This Affiant for Plaintiffs stated further that the seats in the aircraft constituted an unreasonably dangerous condition which prevented passengers from exiting the burning aircraft. This Affidavit specifically refers to seats being in existence on the date of the crash which might have prevented or reduced injuries and makes no reference to standards or criteria applicable prior to 1952 when the aircraft in question was designed and manufactured. In *Gates v. Ford Motor Company*, 494 F.2d 458 (Tenth Cir. 1974) the Court stated in reference to the facts required to establish liability against a manufacturer in a products liability action as follows:

> "To recover, appellant necessarily must establish that the tractor [product] was defective when manufactured, that such defect rendered the tractor unsafe for its intended use, and that the defective tractor proximately caused the deceased's injuries."

The factors or elements noted in the above quotation are common requirements which must be established in all products liability cases whether based on the various theories of negligence, breach of warranty, or strict liability in tort. *American Law of Products Liability 2d, Hursh & Bailey*, § 1.06. Relating this to the issues before the Court in the instant Motion for Summary Judgment, if Plaintiffs fail to establish the aircraft was defective when manufactured and said defect caused the injuries and deaths complained of, then they are not entitled to recover under any of the three theories they have asserted herein of negligence, breach of warranty, or strict liability in tort.

The Plaintiffs have failed to set out any facts by affidavit or other means to refute Defendant Martin-Marietta's position stated in its officer's affidavit that the seats in the aircraft were designed to meet or exceed all criteria prescribed by the then applicable C.A.A. regulations which were in effect when the aircraft was manufactured. The Court must consider this as an undisputed material fact. It must then be considered whether a manufacturer's compliance with such regulations constitutes evidence that the manufacturer met the standards of the industry applicable when the aircraft was manufactured. In other words, is proof that the applicable C.A.A. Regulations as to the design and installation of the seats in question were followed establish that the aircraft was not defective in regard to the seats and seat installations when manufactured.

Defendant Martin-Marietta contends that Congress established design safety standards in the form of the Civil Air Regulations which were in effect when the aircraft in question was issued a type certificate by the Civil Aeronautics Administration. It contends that such certificate was issued after appropriate Federal Regulations concerning safety in design were complied with. Plaintiffs urge that said regulations only constitute minimum design safety standards and that compliance with same would not preclude a finding of negligence on the part of a manufacturer which failed to take additional precautions.

The purposes of the Civil Aeronautics Act were stated by Judge Murrah in *Rosenhan v. United States*, 131 F.2d 932 (Tenth Cir. 1942) as follows:

"*The Civil Aeronautics Act*, supra, *was enacted* as advanced legislation in recognition of rapidly growing air commerce and was comprehensively designed to promote civil aeronautics, and *to* that end *develop and secure maximum aeronautical safety*. Its broad purposes are manifest by the text of the Act. See Section 2 of the Act. The Act created a civil aeronautics authority to be composed of expert personnel, with powers to effectuate the full purposes of the Act. To that end the authority was empowered to designate and establish civil airways, to regulate other airways established with its approval, and to install or supervise the installation of equipment purposed to attain the maximum safety. *It authorized the authority* not only to establish and regulate airways, but *to regulate and prescribe the mechanical standards for aircraft to be flown within the designated airways*." (Emphasis supplied.)

In considering these purposes in relation to the facts present in the instant case, the mechanical standards prescribed by the Civil Aeronautics Administration are quite possibly the same as or constitute the standards of the aircraft industry.

The Court considered an aircraft products liability action arising under Maryland law in the case of *Banko v. Continental Motors Corporation*, 373 F.2d 314 (Fourth Cir. 1966) wherein it stated:

"The test of negligence of a manufacturer or supplier of a given product under Maryland law is whether or not he acted with reasonable care under the circumstances. *Babylon v. Scruton*, 215 Md. 299, 138 A.2d 375 (1958). Cf. *Katz v. Arundel-Brooks Concrete Corp.*, 220 Md. 200, 151 A.2d 731, 78 A.L.R.2d 692 (1959)."

In looking to the relation of such standard of care and compliance with Federal regulatory design standards, the Court further stated:

"Moreover, we cannot agree with plaintiffs that the district court erroneously considered the fact of defendant's compliance with Federal Aviation Agency (hereinafter called F.A.A.) safety regulations on the issue of the standard of care required of the defendant. The regulations, whose purpose is 'to promote safety of flight of civil aircraft', 49 U.S.C. § 1421 (1964), seem to us to be relevant and useful evidence on the standard-of-care issue, and we think them admissible under federal practice. *Citrola v. Eastern Air Lines*, 264 F.2d 815 (2 Cir. 1959); *Prashker v. Beech Aircraft Corp.*, 258 F.2d 602, 76 A.L.R.2d 78 (3 Cir. 1958)."

In the instant case, the undisputed facts indicate that the seats installed in the aircraft in question were designed to meet or exceed the criteria established in the Civil Aeronautics Administration regulations in effect at the time the aircraft was designed and manufactured by Defendant Martin-Marietta. Defendant Martin-Marietta has thus established facts which constitute evidence that it used due care in selecting the seats which were installed in the aircraft in question when said aircraft was designed and manufactured. Plaintiffs' assertion that compliance with regulatory standards only constitutes compliance with minimum standards does not dispute the fact that due care was used in designing the seats and seat assemblies in question. Plaintiffs have failed to counter with any standard other than that set by the applicable Federal Regulations existing in 1952 when the aircraft in question was manufactured. In this regard, they have failed to show that a defect existed in the seats of said aircraft when same was manufactured and that such defect allegedly caused or enhanced the injuries or deaths giving rise to this action. The state of the record as far as this Motion for Summary Judgment is concerned is that the seats and seat attachments in the aircraft in question met safety requirements established by the Civil Aeronautics Administration at the time the aircraft was manufactured and Plaintiffs have failed to counter with factual allegations which show defects existed in the aircraft when manufactured. As note, infra, the existence of defects in a product at the time of manufacture is a common requirement which must be established in all products liability cases brought under the various theories for recovery asserted herein of negligence, strict liability in tort, and breach of warranty. Because this Court has found that Plaintiffs have failed to counter Defendant Martin-Marietta's showing that the aircraft was not defective when manufactured, Plaintiffs would not be entitled to recover under any of the theories asserted and the Court need not consider which of said theories are applicable in this case under Maryland law. Further, proof of defectiveness of a product which it is alleged enhanced or caused a Plaintiff's injuries is required before the crashworthiness doctrine would apply. It is not necessary for the Court to determine if said doctrine should or should not be applied in the instant case in light of the findings of this Court as noted above.

Plaintiffs have failed to show that any genuine issue for trial exists which would establish liability against Defendant Martin-Marietta based on any defect in the aircraft which existed at the time same was manufactured, and which defect proximately caused or contributed to the injuries or deaths complained of. Defendant Martin-Marietta's Motion for Summary Judgment is sustained and this action is dismissed as to said Defendant.